**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HYDE PARK COMPANY,
a New Mexico limited liability company,

      Plaintiff-Appellant,

v.

SANTA FE CITY COUNCIL;
PESO CHAVEZ, Councilor;
MOLLY WHITTED, Councilor;
AMY MANNING, Councilor;
FRANK MONTANO, Councilor;
LARRY DELGADO, Councilor;
PATTI BUSHEE, Councilor;
CHRIS MOORE, Councilor,
ART SANCHEZ, Councilor;
DEBBIE JARAMILLO, Mayor,

      Defendants-Appellees,

and

GREATER CALLECITA
NEIGHBORHOOD ASSOCIATION;
WILLIAM A. DARKEY;
RICHARD FOLKS,

      Defendants-Intervenors-Appellees.

No. 99-2079

HYDE PARK COMPANY,
a New Mexico limited liability company,

      Plaintiff-Appellant,

v.

                                    No. 99-2084

FRANK MONTANO, Councilor;
LARRY DELGADO, Councilor;
FREDERICK M. ROWE;
PATTI BUSHEE, Councilor;
GREATER CALLECITA
NEIGHBORHOOD ASSOCIATION;
RICHARD FOLKS,

      Defendants-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. Nos. CIV-98-1011-JP/LCS & CIV-98-821-JP/LCS)

Jerry A. Walz (Karl H. Sommer of Sommer, Fox, Udall, Othmer, Hardwick & Wise, P.A., and Marianna G. Geer of Felker, Ish, Ritchie & Geer, P.A., Santa Fe, New Mexico, on the brief), Albuquerque, New Mexico, for Plaintiff-Appellant.

Nancy R. Long of Herrera, Long & Pound, P.A., and Frederick M. Rowe, Santa Fe, New Mexico, for Defendants-Appellees & Defendants-Intervenors-Appellees.

Before **BALDOCK**, **McKAY**, and **ALARCÓN**,[*] Circuit Judges.

**BALDOCK**, Circuit Judge.

---

   [*] The Honorable Arthur L. Alarcón, United States Senior Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

The narrow issue we must decide in this case is whether Plaintiff Hyde Park Company was entitled as a matter of federal constitutional law to approval of a proposed subdivision plat for land within the City of Santa Fe, New Mexico, where Hyde Park's proposed plat to Defendant Santa Fe City Council met all enumerated requirements for plat approval.

I.

Plaintiff Hyde Park Company owns certain real property within the City of Santa Fe. In September 1994, Hyde Park applied to the City for approval of a proposed residential subdivision plat. When, over two years later and after much wrangling, the City Council voted 5-2 to reverse the City Planning Commission's decision to approve Hyde Park's proposed plat, Hyde Park filed suit in New Mexico state court against the City Council and its members. Hyde Park Co. v . Santa Fe City Council, No. 98-CV-1011 (D.N.M., removed Aug. 21, 1998). Shortly thereafter, Hyde Park also filed suit against the Greater Callecita Neighborhood Association and certain individuals opposed to the application. Hyde Park Co. v. Greater Callecita Neighborhood Ass'n, 98-CV-821 (D.N.M., removed July 8, 1998). In addition to numerous state law claims, the suits alleged that Defendants had conspired to deprive and did deprive Hyde Park of property without due process of law in violation of 42 U.S.C. § 1983. Defendants subsequently removed both suits to federal court. See 28 U.S.C. § 1441.

Upon Defendants' respective motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the district court held that Hyde Park had no protectible property interest in its unapproved plat application. Accordingly, Hyde Park's claims that Defendants deprived it of procedural and substantive due process by rejecting its proposed plat necessarily failed. The district court dismissed Hyde Park's federal claims and remanded its state law claims to state court. See 28 U.S.C. § 1367(c)(3). Hyde Park appeals. We exercise jurisdiction under 28 U.S.C. § 1291. We review the district court's orders of dismissal de novo, accepting the complaints' well-pleaded factual allegations as true. Morse v. Regents of Univ. of Colorado, 154 F.3d 1124, 1126 (10th Cir. 1998). Applying this standard, we affirm.[1]

---

[1] Defendant Greater Callecita Neighborhood Association has filed a motion to dismiss for lack of appellate jurisdiction. According to the Association, the district court's orders of dismissal are not final under § 1291 because the state law claims which the district court remanded to state court remain unadjudicated. Federal appeals courts have consistently held, however, that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under § 1367 to remand supplemental state law claims to state court. See, e.g., Erie County Retirees Ass'n v. County of Erie, 220 F.3d 193, 201-02 (3d Cir. 2000); Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc, 179 F.3d 1279, 1285-87 (11th Cir. 1999); see also St. John v. International Ass'n of Machinists and Aerospace Workers, Local # 1010, 139 F.3d 1214, 1216-17 (8th Cir. 1998) (remand order which resulted from the dismissal of federal claims over which the court had subject matter jurisdiction, put the litigants "effectively out of court," and thus created a final appealable order under § 1291). Otherwise, a district court's order dismissing federal claims in such a situation would be effectively unreviewable. See 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3740 at 521-22 & n.16 (3d ed. 1998). Accordingly, we deny the Association's motion to dismiss for lack of appellate jurisdiction.

II.

The Fourteenth Amendment proscribes a state from, among other things, depriving a party of "property without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision. See, e.g., Mitchell v. City of Moore, 218 F.3d 1190, 1198 (10th Cir. 2000); Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998); Archuleta v. Colorado Dep't of Institutions, Div. of Youth Serv., 936 F.2d 483, 490 (10th Cir. 1991). We established nearly twenty-five years ago that to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.[2] See Weathers v. West Yuma County Sch. Dist. R-J-1, 530 F.2d 1335, 1340-42 (10th Cir. 1976) (absence of a protectible property interest foreclosed further inquiry into plaintiff's procedural and substantive due process claims) (citing Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 5 (7th Cir. 1974) (Stevens, J.) (absence of a property interest was fatal to plaintiff's procedural and substantive due process claims)).

---

[2] Of course, under the Fourteenth Amendment, a party also is entitled to due process protections before a state deprives that party of life or liberty. U.S. Const. amend. XIV, § 1.

The Supreme Court defines "property" in the context of the Fourteenth Amendment's Due Process Clause as a "legitimate claim of entitlement" to some benefit. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). An abstract need for, or unilateral expectation of, a benefit does not constitute "property." Id. Due Process is not an end in itself. Rather, the constitutional purpose of Due Process "is to protect a substantive interest to which . . . [a party] has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250 (1983). Property interests "are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Thus, consistent with Supreme Court precedent, a right to a particular decision reached by applying rules to facts constitutes "property." See Fleury v. Clayton, 847 F.2d 1229, 1231 (7th Cir. 1988) (Easterbrook, J.).

In municipal land use regulation cases such as this, the entitlement analysis presents a question of law and focuses on "whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." Norton v. Village of Corrales, 103 F.3d 928, 931-32 (10th Cir. 1996). "The entitlement analysis centers on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1116 (10th Cir. 1991). To prevail, Hyde Park must therefore demonstrate that a set of

6

conditions exist under state and local law, "the fulfillment of which would give rise to a legitimate expectation" that the City Council would approve Hyde Park's plat. Id. In other words, Hyde Park must show that under the applicable law, the City Council had limited discretion to disapprove the proposed plat. "Otherwise, the city's decisionmaking lacks sufficient substantive limitations to invoke due process guarantees." Id.

III.

A myriad of New Mexico state statutes and Santa Fe city ordinances govern the process by which a plat application is approved or disapproved. Under N.M. Stat. Ann. § 3-19-1 (Michie Supp. 1999), a municipality may establish a planning commission and delegate authority to it. The statute provides in relevant part:

> A municipality is a planning authority and may, by ordinance:
>     A. establish a planning commission;
>     B. delegate to the planning commission;
>         (1) the power, authority, jurisdiction and duty to enforce and carry out the provisions of law relating to planning, platting and zoning, and
>         (2) other power, authority, jurisdiction and duty incidental and necessary to carry out the purpose of . . . [Article 19] [and]
>     C. retain to the governing body as much of this power, authority, jurisdiction and duty as it desires; . . . .

Id. (emphasis added).

Pursuant to § 3-19-1, the Santa Fe City Council enacted Santa Fe, NM, Code § 14-2.1 establishing a Planning Commission. Section 14-2.2 delegates the City Council's authority "for planning within the planning jurisdiction of the city, and for approving subdivision plats within the . . . city . . . to the planning commission,

7

except for those powers retained by the governing body in the Santa Fe City Code."
Id. § 14-2.2 (emphasis added). The City Code imposes a two-tiered plat approval process before the Planning Commission, i.e., preliminary plat approval, see id. § 14-82.2, and final plat approval, see id. § 14-82.3.

The City Council's delegation of authority to the Planning Commission, however, is not absolute. The Council retains the power to review the Planning Commission's decisions. Section 14-7.5A provides that within thirty days, the Council may decide to review any final order or determination of the Planning Commission upon proper notice, and "such notice shall be a stay of execution of such final order or determination." Id. § 14-7.5A (emphasis added). In reviewing such final order or determination, "the governing body may reverse or affirm, wholly or partly, or may modify the order, requirements, decision or determination as ought to be made and to that end shall have in addition to all other municipal authority, that authority of the planning commission." Id. § 14-7.5B (emphasis added). Thus, given the City Council's right of review, ultimate planning decisions within the City of Santa Fe clearly rest with the City Council. See Mitchell v. Hedden, 610 P.2d 752, 753 (N.M. 1980) ("The Planning Commission is a creature of the City Council and has no authority independent of the City Council.").

For purposes of our review, we accept as true Hyde Park's allegation that "[e]very city department having the duty to review the final submission for compliance with the subdivision regulations and other regulations of the City of Santa Fe has indicated that the final submission is in compliance with the subdivision regulations." Consistent therewith, the Planning Commission granted final approval of Hyde Park's proposed plat on April 3, 1997. At the City Council's regularly scheduled meeting on April 30, 1997, however, the Council, pursuant to Santa Fe, NM, Code § 14-7.5A, voted to review the Planning Commission's April 3 decision. Following a public hearing on the matter held May 28, 1997, the Council voted 5-2 to reverse the Planning Commission's decision, and disapprove the plat. The Council did not formally enter the reasons for its action upon the record.[3]

---

[3] In addition to its motion to dismiss for lack of a final appealable order, see supra note 1, Defendant Greater Callecita Neighborhood Association has filed a "Motion for Summary Dismissal Due to Mootness." According to the Association, the Planning Commission's final approval of Hyde Park's proposed plat on April 3, 1997, is now "null and void" due to operation of the City Code's two-year sunset provision terminating unrecorded plat approvals. See Santa Fe, NM, Code § 14-82.5C. The Association's motion is meritless. If Hyde Park had a legitimate claim of entitlement to the City Council's approval of the plat at the time the council voted against it, then Hyde Park has a protectible property interest which cannot be summarily extinguished by operation of § 14-82.5C's sunset provision without affording Hyde Park due process of law. Thus, a live controversy continues to exist between the parties. We deny the Association's motion to dismiss this appeal based on mootness.

IV.

Hyde Park argues it has a protectible property interest in the approval of its proposed plat because the City Council had a non-discretionary, mandatory duty to approve the plat. According to Hyde Park, because the plat complied with all the applicable ordinances of the City of Santa Fe, the Council's obligation to approve the plat was purely ministerial.[4] While we are not altogether unsympathetic to Hyde Park's quandary, we conclude that the applicable ordinances read as a whole fail to place any discernible substantive limitations on the City Council's discretion in this matter, and thus fail as a matter of federal constitutional law to establish more than Hyde Park's unilateral expectation that the City Council would approve its proposed plat.

To support its argument, Hyde Park relies heavily on Santa Fe, NM, Code § 14-82.2E, which provides that "[t]he final plat shall be submitted for approval by the planning commission and recorded when these regulations and the conditions of

---

[4] The New Mexico Supreme Court defines a ministerial act as "'an act or thing which [one] is required to perform by direction of law upon a given state of facts being shown to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case.'" El Dorado at Santa Fe, Inc. v. Board of County Comm'rs, 551 P.2d 1360, 1363-64 (N.M. 1976) (quoting State v. Walker, 292 P.2d 329, 332 (N.M. 1956)). In El Dorado, the court held that "[u]pon compliance with the statutory requisites to subdivision and sale by a subdivider, followed by a determination of the board of county commissioners that such compliance had in fact occurred, rights vest in the subdivider which cannot thereafter be withheld, extinguished or modified except upon due process of law." 551 P.2d at 1366. Substantively, El Dorado is of little assistance to Hyde Park because the court's holding in that case turned upon its construction of an entirely different statutory scheme relating to the subdivision of land within the County of Santa Fe but outside a municipality.

10

the preliminary plat are met." Hyde Park's argument that the Planning Commission must approve the final plat for recording when the Commission determines all applicable regulations and conditions of approval have been met may well be correct. Otherwise, the recording of the plat at that stage would serve no useful purpose. And as a practical matter, we suspect the Planning Commission's final approval of a plat ends the plat approval process in most instances because the City Council's review of the Commission's actions is not mandatory. But the proposition that the City Council upon review must likewise approve a plat which meets all specified requirements does not follow from the language of the applicable ordinances.

Despite Hyde Park's protestations to the contrary, the Planning Commission is not the final policymaking authority in this case. Rather, we have already explained that the City Council has retained the final authority with respect to land use regulation matters, and has the power to review a final decision of the Commission. See id. § 14-7.5B. Once the City Council decided to exercise its power of review and provided notice to interested parties, the Planning Commission's final decision was stayed. See id. § 14-7.5A. Thus, Hyde Park's plat was never recorded. Upon review, the City Council had the power to affirm, reverse, or modify the Commission's decision "as ought to be made." Id. § 14-7.5B. This language is hardly an endorsement of Hyde Park's claim that the City Council lacked discretion in this matter. Without clearly defined limitations on the City Council's exercise of discretion to assist us in our construction of local law, we

11

hesitate to infer such limits and involve this federal court in a land use regulation dispute

which is purely a matter of local concern.  See Norton, 103 F.3d at 933.  Because the

ordinances as written contain no standards governing the City Council's exercise of

discretion, the ordinances simply do not impose "significant substantive restrictions"

on the City Council's power of review.  Jacobs, 927 F.2d at 1117 n.4.  Accordingly,

the district court properly concluded that Hyde Park has no protectible property

interest on which to base its due process claims.[5]

     AFFIRMED.

---

[5] We have noted that authorities responsible for land use regulation generally are granted wide discretion in their decisions.  Jacobs, 927 F.2d at 1116.  This case is no different.  The City Council's action in this case, however, is not immune from judicial review.  State law provides for review of the City Council's action, see N.M. Stat. § 3-19-8 (Michie Supp. 1999), which the court may set aside if found to be arbitrary, capricious, fraudulent, or based upon insubstantial evidence.  See Zamora v. Village of Ruidoso Downs, 907 P.2d 182, 186-89 (N.M. 1995).