**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WILLIAM KABUTU,

     Plaintiff - Appellant,

v.

ROBERT SHORT,

    Defendant - Appellee.

_____

WILLIAM KABUTU,

     Plaintiff - Appellant,

v.

ROBERT CHISHOLM,

    Defendant - Appellee.

No. 21-3229
(D.C. No. 2:21-CV-02407-EFM-KGG)
(D. Kan.)

No. 21-3230
(D.C. No. 2:21-CV-02340-EFM-KGG)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of these appeals. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

William Kabutu, proceeding pro se, appeals the district court's dismissal of two civil rights actions he filed. Because the actions arise from the same set of operative facts, we have combined the appeals for disposition only. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in each appeal. We also deny all of Mr. Kabutu's pending motions.

## I. Background

Mr. Kabutu's two-year-old son drowned in the swimming pool of the mobile home park where Mr. Kabutu lived. While awaiting trial in Kansas state court on murder charges related to the drowning, Mr. Kabutu filed two actions under 42 U.S.C. § 1983 in Kansas federal district court. In the case underlying appeal no. 21-3229, he named as defendant the lead prosecutor in his state criminal prosecution, Robert Short. Mr. Kabutu alleged that the prosecution of his criminal case was occurring in bad faith and amounted to an abuse of process because of an unlawful seizure, search, and retention of his cell phone and the deletion of allegedly exculpatory Google Maps data from the phone regarding his location at the time his son died. The district court granted Mr. Short's motion to dismiss based on the *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971). In the case underlying appeal no. 21-3230, Mr. Kabutu sued a police detective, Robert Chisholm, in his individual capacity. Detective Chisholm participated in the criminal investigation which led to Mr. Kabutu's arrest and prosecution. Mr. Kabutu alleged that Detective Chisholm's seizure and retention of his cell phone violated his Fourth, Fifth, and Fourteenth Amendment rights. The district court dismissed that action

2

based on qualified immunity.  Mr. Kabutu appeals both dismissals and a magistrate judge's ruling in no. 21-3229 staying discovery and denying his motion to compel discovery.

## II.  Appeal No. 21-3229[1]

### A.    *Younger* dismissal

*Younger* abstention applies if

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (internal quotation marks omitted).  "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."  *Id.*

The district court concluded that all three conditions were met and no extraordinary circumstances existed.  It therefore applied *Younger* abstention and dismissed the action.  On appeal, Mr. Kabutu contests only the second and third conditions.  Our review is de novo.  *See Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997).

---

[1] Because Mr. Kabutu represents himself, we construe his filings liberally, but we may not act as his advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

As to the second condition, Mr. Kabutu argues that the Kansas state court is not an adequate forum to litigate his constitutional claims because he has not had any success there with respect to his cell phone. We disagree. As a general matter, Kansas state courts provide an adequate forum for the resolution of constitutional claims incident to a state criminal prosecution absent a clear state bar to the assertion of such claims. *See Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("[O]rdinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights."); *Crown Point I*, 319 F.3d at 1215 ("Typically, a plaintiff has an adequate opportunity to raise federal claims in state court unless state law clearly bars the interposition of the federal . . . constitutional claims." (brackets and internal quotation marks omitted)). Mr. Kabutu has not demonstrated that such a bar exists. In his complaint, he alleged only that various attorneys who represented him during pretrial proceedings in his criminal case did not do enough to procure the return of his cell phone, and that despite docketing a hearing on a pro se motion he filed seeking the return of his phone, the state trial court did not hear that motion as scheduled. These allegations fail to show that the state court is an inadequate forum for resolution of his constitutional claims regarding his cell phone.

Concerning the third condition, Mr. Kabutu argues that although Kansas has an interest in a fair and just criminal justice system, his criminal proceedings have not been fair because (1) he has been on house arrest for eighteen months, (2) he worries about his bond conditions because he has lost his job, and (3) he could not get any

4

relief from the state court through his attorneys in the criminal proceeding. The first two points are irrelevant to the fairness of the criminal proceeding as related to his cell phone. And the third point does not undermine Kansas's strong interest in the administration of its criminal justice system. *See, e.g.*, *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.").

The district court further concluded that despite Mr. Kabutu's allegations of bad faith, *Younger* abstention was appropriate because the bad-faith allegations were "conclusory and unsupported." R. at 77; *see Phelps*, 122 F.3d at 889 ("[I]t is the plaintiff's heavy burden to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." (internal quotation marks omitted)). The district court considered three factors relevant to whether a state prosecution allegedly "commenced in bad faith or to harass" can overcome *Younger* abstention:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps*, 122 F.3d at 889. Mr. Kabutu does not expressly argue bad faith on appeal as a means of overcoming abstention under *Younger*, but we agree with the district court's conclusion that there is no indication that any of these factors are present.

5

We also reject Mr. Kabutu's argument that he should not have to wait until he completes appellate and post-conviction remedies before securing the relief he believes he is entitled to. *See Winn v. Cook*, 945 F.3d 1253, 1259 (10th Cir. 2019) ("[W]e have consistently refused to find an exception to *Younger* when the injury could ultimately be corrected through the pending state proceeding or on appeal.").

## B.    Discovery issues

Mr. Short filed a motion to stay discovery based on his motion to dismiss under *Younger*. Mr. Kabutu filed a motion to compel discovery. The magistrate judge granted the motion to stay because the case would be resolved if the district court granted the motion to dismiss and fact discovery would not affect that resolution because *Younger* presents a legal issue. The magistrate judge denied the motion to compel because discovery had not commenced, so there was nothing to compel, and Mr. Kabutu had not complied with the meet-and-confer requirements of Fed. R. Civ. P. 37(a)(1) and the corresponding local court rule.

Mr. Short suggests this court lacks jurisdiction to consider Mr. Kabutu's appellate arguments concerning the magistrate judge's discovery ruling because he failed to file any objections to that ruling with the district court, as required under Fed. R. Civ. P. 72(a). We disagree. Rule 72(a) sets a 14-day deadline for filing objections to non-dispositive orders and provides that "[a] party may not assign as error a defect in the order not timely objected to." However, the failure to file timely objections to a magistrate judge's non-dispositive rulings does not deprive this court of jurisdiction over an appellate challenge to the rulings but only serves as a

6

non-jurisdictional waiver subject to our firm waiver rule. *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 781–83 (10th Cir. 2021). Under the firm waiver rule, "a party who fails to make a timely objection to the magistrate judge's [ruling] waives appellate review of both factual and legal questions," subject to limited exceptions. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Construing Mr. Short's argument as invoking the firm waiver rule, we agree that Mr. Kabutu failed to make a timely objection. Eight days after the magistrate judge's ruling, Mr. Kabutu filed a motion for reconsideration, which the magistrate judge promptly denied, *see* R. at 3 (ECF No. 20) (text-only docket entry). Even liberally construed, we are unable to read the motion for reconsideration as an objection to the magistrate judge's ruling, and Mr. Kabutu does not argue that he intended it to be an objection. Nor does he argue that an exception to the firm waiver rule applies. We therefore enforce the waiver and decline to review the discovery ruling.[2]

### III.  Appeal No. 21-3230

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Est. of Booker v.*

---

[2] Even if we overlooked the waiver, we would conclude that the magistrate judge did not abuse his discretion in staying discovery and denying Mr. Kabutu's motion to compel. *See Diaz v. Paul J. Kennedy L. Firm*, 289 F.3d 671, 674 (10th Cir. 2002) ("A district court's discovery rulings are reviewed for an abuse of discretion.").

*Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (alteration, citation, and internal quotation marks omitted). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (internal quotation marks omitted). "To determine whether the right was clearly established, we ask whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotation marks omitted). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted).

In this case, Mr. Kabutu alleged that when officers responded to the scene of the drowning, he accessed his cell phone several times to provide the names and telephone numbers for contacts requested by law enforcement. However, Detective Chisholm said in addition to looking for contact information, Mr. Kabutu might have spoken with someone, and another officer observed Mr. Kabutu watching a video about gun cleaning and assembly. Detective Chisholm then seized the phone and asked Mr. Kabutu for the password. Mr. Kabutu refused to provide the password and said he would not turn over the phone without a warrant. Detective Chisholm apparently turned the phone over to the other officer, who took Mr. Kabutu to the

8

hospital for a blood draw.  Meanwhile, Detective Chisholm obtained a warrant, went to the hospital, and seized the phone.[3]

The district court granted Detective Chisholm's motion to dismiss on the ground of qualified immunity because (1) he obtained Mr. Kabutu's cell phone after acquiring a search warrant; (2) Mr. Kabutu supplied no controlling precedent indicating that it was unreasonable for an officer in Detective Chisholm's position to rely on an unsigned warrant to seize Mr. Kabutu's phone; and (3) nothing in the complaint showed that Detective Chisholm could have accessed information on the phone.

Our review is de novo.  *See Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022).  Before we begin our analysis, we note that in his complaint, Mr. Kabutu named Detective Chisholm in his individual capacity only, but in the complaint's opening paragraph and prayer for relief, he asked only for declaratory and injunctive relief.  The complaint, therefore, is ambiguous as to whether Mr. Kabutu sought damages against Detective Chisholm in his individual capacity or equitable relief against Detective Chisholm in his official capacity.  The district court

---

[3] Based on paragraph 48 of the complaint, the district court interpreted Mr. Kabutu's allegations to mean that the other officer seized the phone at the scene. But paragraph 10 of the complaint suggests that Detective Chisholm was the seizing officer.  Read in the light most favorable to Mr. Kabutu, we construe these allegations to mean Detective Chisholm initially seized the phone but gave it to the other officer until Detective Chisholm could obtain a warrant.  *See Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (in considering a motion to dismiss, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff" (internal quotation marks omitted)).

apparently treated the complaint as seeking damages because Detective Chisholm was named only in his individual capacity, *see Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."), and qualified immunity is a defense against claims seeking monetary relief but not equitable relief, *see Brown v. Buhman*, 822 F.3d 1151, 1161 n.8 (10th Cir. 2016) ("Neither the absolute nor qualified immunities extend to suits for injunctive or declaratory relief under § 1983." (internal quotation marks omitted)).  Mr. Kabutu has not contested the district court's characterization. Therefore, for purposes of analyzing the district court's ruling, we will treat the claims as seeking damages.

Mr. Kabutu argues that the search warrant was invalid because it lacked the date and time of issuance and the signature of the issuing judge.  He further maintains that Detective Chisholm deleted information that established his whereabouts at the time of the crime and posits that a reasonable person would have known that deleting exculpatory evidence violated his constitutional rights.  These arguments are insufficient to show error in the district court's ruling.

In support of his arguments, Mr. Kabutu cites cases involving the general requirement of a valid search warrant supported by probable cause.  But he does not acknowledge or contest the district court's observation that in *United States v. Cruz*, 774 F.3d 1278, 1285 (10th Cir. 2014), this court held that the Fourth Amendment does not require an issuing judge's signature on a search warrant.  And he provides

10

no authority for his argument that the warrant was constitutionally invalid because it lacked a date and time.  Nor has he challenged the district court's determination that there was adequate probable cause for seizure of the phone based on officers' observations of him using the phone at the scene or that the complaint failed to adequately demonstrate that Detective Chisholm did or could have accessed the data, as would be necessary to show a constitutional violation based on deleting allegedly exculpatory data.

Moreover, even if there was a constitutional violation regarding the seizure of the phone, Mr. Kabutu cites no authority clearly establishing it would have been apparent to Detective Chisholm that, despite any constitutional infirmities in the initial warrantless seizure, he violated Mr. Kabutu's constitutional rights by relying on the later-issued warrant even though it lacked a date, a time, or the issuing judge's signature.  "[C]learly established law must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).  "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent[.]"  *Id.* (citation and internal quotation marks omitted).  Mr. Kabutu's reliance on general legal principles regarding search warrants or the principle that "qualified immunity [will] be defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the [plaintiff's] constitutional rights," *Harlow v.*

11

*Fitzgerald*, 457 U.S. 800, 815 (1982) (internal quotation marks omitted), is insufficient to meet his burden.

### IV.  Pending Motions

**A.   Motion to supplement record in appeal no. 21-3230**

In appeal no. 21-3230, Mr. Kabutu has filed a Motion For Leave To Supplement The Record And To Allow Initial Brief's [sic] Exhibits.  He seeks to add to the record on appeal (1) transcripts from his state criminal proceeding and (2) exhibits to his opening brief.  Mr. Kabutu claims the transcripts would show that the state proceedings have been unfair and the exhibits would show that Detective Chisholm took Mr. Kabutu's cell phone home with him.  As a general matter, we "will not consider material outside the record before the district court." *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).  This court is authorized to supplement the record on appeal but only when "anything material to either party is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2)(C).  Mr. Kabutu's motion does not meet this standard because none of the materials he seeks to add to the record were before the district court.  Instead, he seeks to build a new record, which Rule 10(e) does not permit.  *See Kennedy*, 225 F.3d at 1191.  Accordingly, we deny his motion.

**B.   Motions related to tolling limitations period**

In each appeal, Mr. Kabutu has filed two substantially identical motions:  (1) a Motion For Leave To File Motion Seeking Order To Toll Time and (2) a Motion Seeking Order To Toll Time.  In these motions, he invokes equitable tolling and the

continuing-violations doctrine to request orders from this court that the § 1983 limitations period for claims related to the deletion of data from his cell phone should stop on the date he informed his attorneys about the deletion (October 27, 2020) and not begin again until his phone is returned to him. We construe these requests as seeking opinions from this court that the limitations period on a § 1983 action he might file in the future regarding alleged tampering with his cell phone is tolled until the police return the phone to him. We deny all four motions because we have "neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before [us]." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks omitted).

## C.    Motions related to limited remand

In each appeal, Mr. Kabutu has filed two substantially identical motions: (1) a Motion For Leave To File Motion Seeking Urgent Limited Remand To The District Court and (2) a Motion Seeking Urgent Limited Remand To The District Court. In these motions, he asks us to remand both cases to the district court for an evidentiary hearing because at a recent hearing in his state criminal proceeding, a State forensics expert testified that Google Maps data was deleted from Mr. Kabutu's cell phone sometime after he remotely accessed his Google account. Mr. Kabutu provides no legal authority for such a remand, nor are we aware of any. Consequently, we deny these four motions.

## V. Conclusion

We affirm the district court's judgments in each appeal. We deny all of Mr. Kabutu's pending motions.

Entered for the Court

Carolyn B. McHugh
Circuit Judge